```
 1           IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
 2
     CIVIL ACTION NO. 15-cv-00179-WYD-NYW
 3   _____

 4   IT PORTFOLIO, INC., a Colorado Corporation,

 5            Plaintiff,

 6   v.

 7   NER DATA CORPORATION, a Delaware Corporation
     NER DATA PRODUCTS, INC., a New Jersey Corporation
 8   STEPHEN F. OATWAY, an Individual, and
     ATLANTIC TECHNOLOGY INTEGRATORS, LLC,
 9   a Delaware Limited Liability Corporation,

10            Defendants.
     _____
11

12             RULE 30(b)(6) DEPOSITION OF
                    IT PORTFOLIO, INC.,
13              APPEARING MARK THOMAS LESSNER
                  Thursday, March 30, 2017
14                    Denver, Colorado

15                        Volume 1

16            Pursuant to Notice and the Federal
     Rules of Civil Procedure, the deposition of
17   IT Portfolio, Inc., appearing Mark Thomas
     Lessner, was taken on behalf of the Defendants at
18   2301 Blake Street, Denver, Colorado 80205, on
     March 30, 2017, at 12:19 p.m., before Lynnette
19   Copenhaver, Registered Merit Reporter, Certified
     Realtime Reporter, and Notary Public within
20   Colorado.

21

22

23

24

25   Job #25827
```

IT PORTFOLIO vs NER DATA  
Mark Lessner 30(b)(6)  
Job 25827  
Page 2

```
1                    A P P E A R A N C E S
2
     For the Plaintiff:
3
             DUSTIN J. PRIEBE, ESQ.
4            Podoll & Podoll, P.C.
             5619 DTC Pkwy, Suite 1100
5            Greenwood Village, Colorado 80111
                 Phone:  303.861.4000
6                Email:  Dustin@podoll.net

7    For the Defendant NER Data Corporation:

8            ANDREW C. OATWAY, ESQ.
             MORISI & OATWAY, P.C.
9            730 Hancock Street
             Quincy, Massachusetts 02170-2723
10               Phone:  617.479.0400
                 Email:  Aco@morisi.com
11

12   For the Defendant Atlantic:

13           BARRY S. KANTROWITZ, ESQ.
             KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
14           747 Chestnut Ridge Road
             Chestnut Ridge, New York 10977
15               Phone:  201.391.7000
                 Email:  Bkantrowitz@kgglaw.com
16
     Also Present:
17
             JASON WEISS, ESQ.
18           Managing Member
             Atlantic Technology Integrators, LLC
19
             Jack Drose
20

21

22

23

24

25
```

```
 1        Q.    Okay.  Now, when you say "this
 2   agreement," you're referring to Exhibit A to the
 3   amended complaint, right?
 4        A.    Correct.
 5        Q.    All right.  When was the software
 6   development and assignment agreement actually
 7   signed --
 8        A.    It was signed --
 9        Q.    -- to the best of your memory?
10        A.    It would have been signed on or about the
11   date of the fax stamp on the agreement itself,
12   which was 2/25/2010.
13        Q.    All right.  So in the first paragraph, it
14   says it's executed as of this 1st day of January
15   2009; do you see that?
16        A.    Mm-hmm.  I do.
17        Q.    But your testimony is that it was
18   actually executed more than a year after that; is
19   that correct?
20        A.    Correct.
21        Q.    All right.  And so your testimony, I
22   believe, was that you became aware that there was
23   something going on with NER and United prior to
24   signing the software agreement, right?
25        A.    Correct.
```

1    Q.    Okay.  And do you say there was anything
2    wrongful about contracting with a company to help
3    them sell the managed print business?
4    A.    I don't know enough yet to be able to
5    answer that.
6    Q.    Okay.  Are you aware of any person or
7    party or company that was willing to pay more for
8    the managed print software and business
9    than -- excuse me -- and assets than what Atlantic
10   agreed to pay?
11   A.    As I said, I was not included in any of
12   those conversations, so I am limited to the
13   discovery that we have.
14   Q.    Okay.
15   A.    Okay.
16   Q.    So what's the answer to the question?
17   A.    You're asking me -- ask the question
18   again.
19   Q.    Are you aware of any party that was
20   willing to pay more for the managed print assets
21   than what Atlantic agreed to pay?
22   A.    And as I said, my knowledge is limited to
23   what we have in the discovery, and that discovery
24   does not show that anybody committed to pay a fee
25   for the entire business that he was trying to

1  sell.
2    Q.    Okay.  What -- what personal benefit do
3  you claim that Steve Oatway obtained from the sale
4  of the managed print assets to Atlantic?
5    A.    What line are we referring to?
6    Q.    It was just a question.  I'm not
7  referring to anything.
8    A.    Well, you're saying I claimed it.  When
9  did I claim that?
10    Q.    Listen to my question carefully.  Okay?
11    A.    I listened to your question.  When did I
12  claim that?
13    Q.    Do you claim that Steve Oatway claimed
14  some personal benefit of the sale of the managed
15  print assets to Atlantic?
16    A.    Give me a moment.  At this point I don't
17  have enough information to answer that question
18  specifically.  If you're asking is it my belief,
19  yes, but I, as of yet, don't have the facts here
20  to present a legal argument to that.
21    Q.    Okay.  But as you sit here today, you
22  believe that Steve Oatway personally benefitted
23  from the sale of the managed print assets to
24  Atlantic?
25    A.    I do.

1   NER pay him an annual salary of at least
2   $252,000."  Do you see that?
3       A.      I do.
4       Q.      And you say that "The asset purchase
5   agreement also resulted in Atlantic taking on
6   leases on which Oatway was personally liable."
7   Do you see that?
8       A.      I do.
9       Q.      Okay.  So other than those two
10  allegations, what -- is there any other personal
11  benefit that you claim that Steve Oatway derived
12  from the sale of the managed print assets to
13  Atlantic?
14      A.      I think that is the primary basis of what
15  we wrote here, along with, as we said here,
16  delaying or hindering its ability to collect the
17  amounts owed.  That the combination of his salary,
18  devoiding the company of revenue, and taking that
19  revenue and applying it to the assets that he and
20  other family members were personally liable
21  towards is what we're asserting here.
22      Q.      Okay.  Now, do you recall that my
23  question was asking you what personal benefit
24  Steve Oatway derived from the sale of the managed
25  print assets to Atlantic?

IT PORTFOLIO vs NER DATA  
Mark Lessner 30(b)(6)  
Job 25827  
Page 106

```
 1        A.    Right.
 2        Q.    Other than the salary and Atlantic taking
 3   on leases on which Oatway was personally liable?
 4        A.    What I'm saying is those are the two
 5   benefits --
 6        Q.    Okay.
 7        A.    -- that we know here, that we stated
 8   here.
 9        Q.    Okay.
10        A.    Certainly we hope that the additional
11   discovery will continue to identify other areas.
12        Q.    Okay.  But as you sit here today, those
13   are the only two benefits that you are aware of?
14        A.    There were plenty of benefits beyond the
15   $252,000, and these two are the physical benefits.
16   The benefits of what he did here personally,
17   right, are -- that's a tremendous amount to
18   continue to take a salary, to then apply the money
19   that you're getting from this sale to the only
20   assets that you own personally and then telling me
21   sorry.  Right?  There's nothing to support
22   your -- yeah, I'm telling you that's the facts
23   that we have here.  Yes.
24        Q.    When you say applying money that you're
25   getting from the sale to -- I think you said the
```