**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:15-cv-00179-DDD-STV

IT PORTFOLIO, INC., a Colorado Corporation

    Plaintiff,

v.

NER DATA CORPORATION, a Delaware Corporation *
NER DATA PRODUCTS, INC., a New Jersey Corporation *
and STEPHEN F. OATWAY, an Individual,

    Defendants.

---

**RESPONSE TO DEFENDANT STEPHEN OATWAY'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT, ON COUNT IX OF THE THIRD AMENDED COMPLAINT [ECF NO. 232]**

The Plaintiff, IT Portfolio, Inc. ("ITP"), by and through its attorneys, Podoll & Podoll, P.C., hereby submits its Response to the Second Motion for Partial Summary Judgment on Count IX of the Third Amended Complaint filed by Defendant Stephen F. Oatway ("Oatway") as follows:

### I. INTRODUCTION

Oatway's motion claims that Count IX of the Third Amended Complaint fails to state a claim for relief because (1) it does not adequately allege a derivative claim under Delaware law and (2) it does not contain sufficient factual allegations to excuse pre-suit demand.

Curiously, Oatway goes through 54 disputed and undisputed facts before taking issue with the allegations of the Amended Complaint. None of these "facts" have any bearing on whether Plaintiff's Amended Complaint adequately states a derivative claim for relief.

For the purposes of the motion, Oatway concedes that NER DC was insolvent. Creditors of an insolvent corporation have standing to bring derivative claims under Delaware law. Pre-suit

demand is excused where notice would be futile. Oatway's Motion for Summary Judgment should be denied.

## II. RESPONSE TO STATEMENT OF MATERIAL FACTS

As required by DDD Civ. P.S. II(E)(1)(d), Plaintiff has included a response to Oatway's Statement of Material Facts. However, none of the facts are relevant or material to the legal issues raised in Oatway's motion: whether Plaintiff has adequately plead a derivative claim under Delaware law and whether pre-suit demand for Oatway to sue himself is excused.

ITP admits and denies Oatway's Facts as follows:

1-5 Undisputed.

6 Undisputed that the agreement was effective on January 1, 2009.

7-15 Undisputed.

16 Undisputed for the purposes of Defendants' Motion.

17 Undisputed.

18 Disputed. The stated goal in the offering materials produced by Everingham & Kerr was to sell the managed print service business. (*See* May 5, 2015 Confidential Business Review, attached as Exhibit A.)

19. Undisputed. *See* Exhibit A.

20-28 Undisputed for the purposes of Defendants' Motion.

29. Undisputed.

30-36 Undisputed for the purposes of Defendants' Motion.

37. Undisputed.

38-41 Undisputed for the purposes of Defendants' Motion.

42     Disputed. As described herein, Defendant Oatway dissipated the assets of the corporation without satisfying the debts owed to creditors, including the Plaintiff. (*See* Additional Facts).

43     Undisputed.

44     Disputed. As described herein, Defendant Oatway dissipated the assets of the corporation without satisfying the debts owed to creditors, including the Plaintiff. (*See* Additional Facts).

45-46   Undisputed for the purposes of Defendants' Motion.

47     Disputed. As described herein, Defendants did not properly access the marketplace, did not allow enough time to find a Buyer, did not offer the Print4 platform to logical buyers, and did not market the Print4 platform for sale independent of its failing business. (*See* Affidavit of Lari Masten attached as Exhibit B.)

48-49   Undisputed.

50     Disputed. NER essentially gave away the Print4 platform in October 2015 after making only a rudimentary effort to sell its failing business. (*See* Affidavits of Lari Masten, Exhibit B, and Jack Drose, attached as Exhibit C.)

51     Disputed. NER failed to market the Print4 platform separately from its failing business, and failed to return the Print4 platform to ITP, who had the right to market it, license it or sell it upon abandonment by NER. (*See* Affidavit of Mark Lessner, attached as Exhibit D. Also, IT Portfolio was aware of a company who had for the past 10 years been acquiring managed print services companies. (*See* Affidavit of Jack Drose, attached as Exhibit C.)

52. Disputed. Defendants admit that ITP was not given the opportunity to market the Print4 platform for sale. (*See also* Affidavit of Jack Drose, attached as Exhibit C concerning potential purchasers.)

53. Disputed. The Print4 platform was not properly marketed to the industry, Defendants did not allow sufficient time to sell the Print4 platform, Defendants did not market the Print4 platform separately from NER's failing business, and upon abandonment, the Print4 platform should have been returned to Plaintiff for marketing, licensing or sale. (*See* Affidavit of Lari Masten, Exhibit B, Affidavit of Jack Drose, Exhibit C, and Affidavit of Mark Lessner, Exhibit D.) Defendant Oatway admitted that the sale to Atlantic was a "fire sale". (*See* Deposition of Steven Oatway p. 143-144, attached as Exhibit F.)

54. Disputed. Plaintiff believes that the value of the Print4 platform was greater than the value shown by the 2010 sale of 27.5% of the managed print services business to United Stationers for $5 million, which sale suggests a value of $18.2 million for 100%. *See* Affidavit of Lari Masten attached as Exhibit B and Affidavit of Jack Drose, attached as Exhibit C.

### III. ADDITIONAL FACTS

1. While NER DC was insolvent in 2014 and 2015, Defendant Oatway took a salary calculated at the rate of $280,000 per year, then calculated at the rate of $252,000 per year, then in October 2015 as he was selling off the assets of the company, at the rate of $148,000 per year for the final quarter of 2015. (*See* e-mail of October 15, 2015, attached as Exhibit E, and Deposition of Stephen Oatway, pp. 121-22, attached as Exhibit F.)

2. The Confidential Memorandum for the sale of the business of NER DC was produced by Everingham & Kerr on May 5, 2015, and on August 24, 2015, about 3½ months later, Defendant Oatway was negotiating a sale of NER's business to Atlantic Tomorrow's Office, a

trade name of Facsimile Communication Industries, Inc. (*See* Letter of August 24, 2015, attached as Exhibit G.)

3. From July through December 2014, Stephen Oatway caused NER DC to make or book $349,046.38 net transfers from NER DC to affiliates and insiders. (*See* Schedule of Insider Transactions, attached as Exhibit H.)

4. From January through September 2015, Stephen Oatway caused NER DC to make or book $986,053.00 net transfers from NER DC to affiliates and insiders. In September 2015 alone, NER DC booked or paid $405,034.31 to affiliates and insiders. (*See Id.*)

5. The Schedule of Insider Transactions, Exhibit H, was taken from the detail general ledger reports from 2014 and 2015 provided by Defendants.

## IV. ARGUMENT

### A. <u>Summary Judgment Standards</u>

A motion for summary judgment may only be granted if there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Sewell v. Great Northern Ins. Co.*, 535 F.3d 1166, 1170 (10th Cir. 2008).

### B. <u>ITP Has Standing to Bring a Derivative Claim for Breach of Fiduciary Duty Under Delaware Law</u>

The parties agree that, under Delaware law, creditors of an insolvent corporation may only bring derivative claims for breach of fiduciary duty against officers and directors. (*See* Motion, § II (citing Order Denying Defendants' Motion for Summary Judgment [ECF No. 227].)

Delaware law recognizes that "creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary

duties." *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007) (emphasis omitted). "The fiduciary duties that creditors gain derivative standing to enforce are not special duties to creditors, but rather the fiduciary duties that directors owe to the corporation to maximize its value for the benefit of all residual claimants." *Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 176 (Del. Ch. 2014) (citing *Gheewalla*, 930 A.2d at 101).

Under *Gheewalla*, ITP gains standing to bring a derivative claim against NER by pleading that the Company is insolvent. *Id*. Oatway's Motion for Summary Judgment admits that NER was insolvent during the relevant time period. (*See* Motion for Summary Judgment at p. 11) ("For purposes of this motion, this court can assume that NER DC was insolvent at the relevant times.") ITP thus has the requisite standing to bring the derivative claim.

### C. ITP's Has Validly Stated a Derivative Claim

"In a direct suit, a shareholder asserts a claim on his own behalf. In a derivative suit, he asserts it on the corporation's behalf." *In re NantHealth, Inc. Stockholder Derivative Litig.*, No. 18-cv-00551-SB, 2021 U.S. Dist. LEXIS 90205, at *3 (D. Del. May 12, 2021). The difference in the nature of the injury is reflected in the manner of recovery. In a derivative suit, any recovery accrues to the corporation. *See Clifford Paper, Inc. v. WPP Inv'rs, LLC*, No. 2020-0448-JRS, 2021 Del. Ch. LEXIS 109, at *21 (Ch. June 1, 2021). Here, because Delaware law applies, any damages from conduct would accrue to NER, however the elements of a breach of fiduciary duty remain the same. *Vertin*, 102 A.3d at 176.

Under Delaware law, to state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship and (2) misconduct by the defendant. *See York Linings v. Roach*, No. 16622-NC, 1999 Del. Ch. LEXIS 160, 1999 WL 608850, at *2 (Del. Ch. July 28, 1999).

Delaware law imposes fiduciary duties on those who effectively control a corporation. *Keenan v. Eshleman*, 2 A.2d 904, 908 (Del.1938) *accord S. Pac. Co. v. Bogert*, 250 U.S. 483, 487–88, (1919) (imposing fiduciary duties on controlling stockholder). It is undisputed that Oatway was an owner, president, chief operating officer, and a director of NER. (Material Facts ¶ 5.) Oatway owed fiduciary duties to NER as a matter of law. Oatway had a fiduciary duty to NER to preserve assets and to maximize the value of these assets. Thus, the first element of the breach of fiduciary duty claim is satisfied.

Oatway's breaches of fiduciary duty harmed NER DC's value and profitability, which, in turn, injured (and continue to injure) all creditors, including ITP. Specifically, "Oatway breached his fiduciary duty by paying himself an unreasonably large salary and by transferring the entire managed print services business, which included Print4, from NER DC and NER DP to Atlantic for less than fair consideration. (Complaint ¶ 248.) (*Id*. at ¶ 246.)

There is, at a minimum, a factual dispute regarding these breaches. Oatway admitted in his deposition that the Print4 assets were sold in a "firesale" (01/19/16 Deposition of S. Oatway, Exhibit F at 144:1-6.) This is contrary to Oatway's self-serving claim that his goal was to "scratch and claw and fight as hard as he could to get as much value out of the transaction as he could get for NER's unsecured creditors." (Statement of Material Facts, ¶ 44.)

It is undisputed that Oatway took a quarter of a million dollar "salary" while NER was insolvent. *See* e-mail of October 15, 2015, attached as Exhibit E, and Deposition of Stephen Oatway, pp. 121-22, attached as Exhibit F.; *see also* Motion at p. 11 ("For purposes of this motion, this court can assume that NER DC was insolvent at the relevant times."). He also caused and personally benefitted from Oatway transfers from NER DC to affiliates and insiders. (*See* Schedule

7

of Insider Transactions, attached as Exhibit H.) This conduct is a breach of fiduciary duty to NER and in turn NER's creditors while it is insolvent.

The fact that the claim is derivative under Delaware law does not entitle Oatway to summary judgment here. The motion should be denied.

### D. To the Extent Required, Plaintiff Should be Granted Leave to Submit a Verification of the Complaint

Defendants claim that summary judgment is warranted because Plaintiffs' Third Amended Complaint is unverified. (Motion, p. 12.) While F.R.C.P. 23.1(b) requires verification of a *shareholder* derivative complaint, it is unclear whether its requirements apply to derivative suits brought by *creditors* of an insolvent corporation. The plain language of the rule clearly does not contemplate creditor derivative suits. *See* F.R.C.P. 23.1 (b)(1) (requiring plaintiff to allege they were a shareholder or member at the time of the transaction complained of…)

Assuming that F.R.C.P. 23.1 does apply to the instant suit, Defendants neglect to cite any authority that suggests summary judgment should be granted based on the technical requirement of verification under Rule 23.1. Such a harsh result would go against the spirit and policy of this district requiring cases to be decided on their merits.

The "purpose of the verification requirement is to prevent the use of the judicial process for strike suits and collusive actions and to insure [sic] that plaintiffs or their attorneys have investigated the charges and concluded that they possess merit." *Thornton v. Evan*, 692 F.2d 1064, 1080-81 (7th Cir. 1982). Generally, "[p]leadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end." *Maty v. Garsselli Chem. Co.*, 303 U.S. 197, 200 (1938).

To cure a Rule 23.1(b) deficiency, courts have dismissed unverified complaints without prejudice leaving plaintiffs an opportunity to amend. *See Glenbrook Cap. Ltd. P'ship v. Mali Kuo,*

*et al.*, 525 F. Supp.2d 1130, 1145 (N.D. Cal. 2007). Courts have also ordered parties to subsequently verify a complaint because "failure to verify is a technical defect curable by amendment." *McDonough v. Americom Intern. Corp.*, 151 F.R.D. 140, 143 (M.D. Fla. 1993) (ordering Plaintiff to verify his complaint within 30 days).

Defendants acknowledge that amendment, rather than summary judgment, is the correct cure for the technical defect caused by an unverified complaint under F.R.C.P. 23.1. (Motion, p. 12 (citing *Glenbrook Capital Ltd. P'ship v. Kuo*, 525 F. Supp. 2d 1130 (N.D. Cal. 2007).

Despite this, Oatway claims that "it is far too late for the court to give plaintiff yet another chance [to amend]." (*Id.*) Oatway fails to provide any explanation as to *why* it is "too late." Verification would not change the underlying allegations, potential discovery, or trial preparation in this matter. The trial will not occur until 2025. No party would be prejudiced by amendment or verification at this juncture.

A Rule 23.1(b) deficiency is not grounds to enter summary judgment. The purpose of the verification requirement will be fulfilled when the verification is filed. The Third Amended Complaint presents a factually detailed description of the breach of contract by Defendants and the diversion and dissipation of corporate funds by Oatway in breach of his fiduciary duties to creditors under Delaware law. It is not a hastily brought Strike suit. This case must be decided on its merits, not a technicality. *See Maty*, 303 U.S. at 200. Plaintiff has filed a verification of the allegations in its Third Amended Complaint with this Response.

### E. Plaintiff Has Adequately Alleged that Pre-Suit Demand Would be Futile

Again, as an initial matter, it is unsettled whether the demand and other requirements of F.R.C.P. 23.1 applies to derivative claims brought by creditors, as opposed to shareholders. *See Prod. Res. Grp., L.L.C. v. NCT Grp., Inc*., 863 A.2d 772, 795-96 (Del. Ch. 2004) (providing

arguments for and against applying the demand requirement to creditors, without deciding the issue) *rev'd on other grounds by Gheewalla*, 930 A.2d 92, 101. Nonetheless, assuming demand was required, it is undisputed that it would have been futile to ask Oatway to sue himself.

Because a derivative suit removes the board's normal control over corporate decisions—in this instance, whether to bring a lawsuit on behalf of the company—derivative suits face a special pleading requirement designed to establish that the board is not the appropriate body to decide whether to bring the lawsuit in question. *E.g., Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984). Specifically, the plaintiff must plead with particularity either that the plaintiff has made a demand for action upon the board and a reason why the court should ignore the board's rejection of the plaintiff's demand, or a good excuse for not making such a demand. Fed. R. Civ. P. 23.1.

The plaintiff establishes demand futility by pleading that those controlling the corporation breached their duty and should be sued by the corporation, or that most of the board members are under the control of a party who should be sued by the corporation; meaning, in either event, that most of the board members are not the parties who should decide whether the company should sue. *E.g., Beam v. Stewart*, 845 A.2d 1040, 1049 (Del. 2004).

A complaint is sufficient regarding demand futility if it alleges that all affiliated directors who controlled and directed the corporation at time of wrongs alleged participated in or acquiesced in challenged transactions and are liable therefor. *Papilsky v. Berndt*, 59 F.R.D. 95, 17 Fed. R. Serv. 2d (Callaghan) 214, Fed. Sec. L. Rep. (CCH) ¶ 93902, 1973 U.S. Dist. LEXIS 14447 (S.D.N.Y. 1973).

Here, plaintiff alleged that:

> Demand for action by NER DC is futile since 72.5% of NER DC, and all of NER DP, are owned by NER Holdings, a corporation

10

> controlled by Defendant Stephen Oatway, his father, Frances C Oatway, and his extended family.

(Complaint ¶ 239; *see also* Exhibit A at pp. 4 & 15.) Oatway does not dispute this ownership and management structure in his Motion for Summary Judgment.

Oatway cites the heightened pleading requirement of F.R.C.P. 23.1 and then argues that Plaintiff's allegations are conclusory. Oatway claims that "pleading that the directors would have been required to sue themselves or family members has been rejected as a rationale for demand futility." (Motion at pp.14-15 (citing *In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165, 168 (D. Del. 2009). This is simply incorrect.

Delaware uses the test articulated in *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (overruled on other grounds) to determine whether demand is futile. "Under this test, the trial court is confronted with two related but distinct questions: (1) whether threshold presumptions of director disinterest or independence are rebutted by well-pleaded facts; and, ***if not***, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment." *Intel Corp.* 621 F. Supp. 2d at 170 (citing *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1990) (overruled on other grounds)) (emphasis added). These two inquiries are disjunctive, meaning that if either prong is met, demand is excused. *Id.* citing *In re J.P. Morgan Chase & Co. S'holder Litig.*, No. 531-N, 906 A.2d 808, 2005 Del. Ch. LEXIS 51, at *28 (Del. Ch. Apr. 29, 2005).1

---

1 *Intel Corp.*, cited by Oatway, does not remotely support his contrived contention that demand futility is not shown where a director is asked to sue himself or his family members. (Motion, pp. 14-15.) In fact, the Court in *Intel Corp.* determined that a ***different*** test applied entirely because the shareholder made "allegations of conscious inaction." *Intel Corp.* 621 F. Supp. 2d. at 169-173 ("where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties, the trial court must apply the *Rales* test.") That test is not applicable to the allegations of the instant complaint.

Under *Aronson*, "demand is excused if [p]laintiffs' particularized allegations create a reasonable doubt as to whether a majority of the board of directors faces a substantial likelihood of personal liability for breaching the duty of loyalty." *Rosenbloom v. Pyott*, 765 F.3d 1137, 1150 (9th Cir. 2014).

Oatway is the President and Director of NER. His father is the largest shareholder. (*See* Exhibit F at 6:21-7:23; 103:10-104:2) He controls everything at the companies. Oatway received material personal benefit from the breaches of fiduciary duties alleged in the complaint, including hundreds of thousands in unjust compensation and insider transactions. (*See* Exhibit H.) All of these circumstances taken together (see *Rosenbloom v. Pyott,* 765 F.3d 1137, 1155 (9th Cir. 2014)), and viewed in the light most favorable to the Plaintiff, are more than sufficient to create a reasonable doubt as to whether Oatway can exercise disinterested judgment in deciding whether to sue himself for the alleged conduct. *See, e.g., Beam v. Stewart*, 845 A.2d 1040, 1049 (Del. 2004) ("A director's interest may be shown by demonstrating a potential personal benefit or detriment to the director as a result of the decision."); *Union De Empleados De Muelles De P.R. PRSSA Welfare Plan v. UBS Fin. Servs*., F.3d 155, 165-66 (1st Cir. 2013) (excusing demand where a director had "high level" involvement with the underlying misconduct).

While the demand requirement applies generally to derivative actions brought under Delaware law, the context here is very different from the common scenario involving a public company governed by a board consisting of outside and management directors. That is, both NER entities are closely-held companies owned by Oatway and his family. (*See* Exhibit A at pp. 4 & 15.) The decision to bring litigation on behalf of NER would be made by Oatway or his father. Under that governance structure, any expectation that NER would bring this action after demand

is nonsensical, and demand futility is a given. The motion for summary judgment on this basis must be denied

## V.  CONCLUSION

Ultimately, disputed issues of material fact prevent summary judgment on the claim against Oatway. ITP has standing to bring its derivative breach of fiduciary duty claim under Delaware law. The facts and evidence show that Oatway breached his fiduciary duties to NER when it was insolvent. NER's technical arguments should be rejected and ITP respectfully requests that the Court deny Oatway's Second Motion for Summary Judgment.


Dated June 28, 2024                                         Respectfully submitted,


                                                                           PODOLL & PODOLL, P.C.

                                                                           By: *s/  Jacqueline E.M. Hill*
                                                                           Jacqueline E.M. Hill, #47789
                                                                           Robert C. Podoll, #8776
                                                                           5619 DTC Parkway, Suite 1100
                                                                           Greenwood Village, Colorado 80111
                                                                           Phone: (303) 861-4000
                                                                           Email: jacqui@podoll.net; rob@podoll.net
                                                                           ***Attorneys for Plaintiff***

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1). This response brief does not exceed 5,500 words.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 28, 2024, the foregoing was electronically served via ECF/PACER on:

Andrew C. Oatway
aco@morisi.com
MORISI & OATWAY, P.C.
730 Hancock Street
Quincy, MA 02170-2723
Tel 617.479.0400
Fax 617.479.6885

The undersigned hereby certifies that on June 28, 2024, the foregoing was served via email on IT Portfolio pursuant to D.C.COLO.LCivR 6.1.

        *Jacqueline E.M. Hill*